UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNIVERSAL FOREST PRODUCTS EASTERN DIVISION, INC.,

    Plaintiff,

v.                                                   Case No. 06-C-0698

MORRIS FOREST PRODUCTS, LLC,

    Defendant.

---

### DECISION AND ORDER ON MOTION TO DISMISS

---

### I. BACKGROUND

This action was commenced on June 15, 2006, when the plaintiff, Universal Forest Products Eastern Division, Inc. ("Universal"), filed its original complaint against the defendant, Morris Forest Products, LLC ("Morris"). Universal asserts two counts against the defendants: (1) equitable subrogation/breach of contract; and (2) unjust enrichment.

On September 5, 2006, the defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff then filed its First Amended Complaint on October 11, 2006, adding additional paragraphs to its pleadings under the unjust enrichment count. The defendant's motion is now fully briefed and ready for decision.

**Factual Pleadings**

The following factual allegations are taken directly from the plaintiffs' amended complaint and are accepted as true for the purpose of this motion to dismiss. *Ameritech Corp. v. McCann*, 297 F.3d 582, 585 (7th Cir. 2002).

Universal is a Michigan Corporation, with its principal place of business in Kent County, Michigan. (Am. Compl. at ¶ 1.) Morris is an Alabama corporation located in Tallapoosa County, Alabama. (Am. Compl. at ¶ 2.) Keystone Exterior Design LLC ("Keystone") is an Ohio corporation that has developed "The Keystone Residential Deck System" ("Deck System"), which allows for the assembly of an outdoor wooden deck without tools or nails and which is therefore portable. (Am. Compl. at ¶ 7.)

On or about November 21, 2003, Keystone and Morris entered into a licensing agreement ("2003 License") authorizing Morris to manufacture the Deck System and sell it directly to various companies, including Menard, Inc. ("Menard"). (Am. Compl. at ¶ 8.) Menard has its principal place of business in Wisconsin, and operates the "Menards" big box retail home improvement stores located throughout the Midwest, including Wisconsin. (Am. Compl. at ¶ 8.)

In order to provide the Deck System to Menard, Morris had to sign a standard Menard Purchase Order ("PO"). (Am. Compl. at ¶ 9.) The PO, among other things, required Morris to reimburse Menard for any defective Deck Systems that it manufactured and that are returned by Menard's customers ("Warranty"). (Am. Compl. at ¶ 9.) The PO also required Morris to reimburse Menard for any Deck System returned by Menard's customers even if manufactured by a previous vendor ("Guaranty"). (Am. Compl. at ¶ 9.)

Pursuant to the PO and the 2003 License, Morris provided the Deck System to Menard's wholesale location in Wisconsin for distribution and sale to customers, including many located in Wisconsin. (Am. Compl. at ¶ 10.) The 2003 License expired on October 31, 2004. (Am. Compl. at ¶ 11.) Morris and Keystone executed a subsequent license in 2005 ("2005 License"). The 2005 License acknowledged the termination of the 2003 License and terminated by its own terms on April

30, 2005. (Am. Compl. at ¶ 11.) Morris continued to provide the Deck System to Menard through the 2005 License and the PO. (Am. Compl. at ¶ 12.)

After the termination of the 2005 License, Universal and Keystone entered into a license agreement ("Current License") whereby Universal was authorized to manufacture and sell the Deck System directly to Menard and other retailers. (Am. Compl. at ¶ 13.)

In order to provide the Deck System to Menard, Universal had to sign the standard PO, which as with the PO signed by Morris, required Universal to reimburse Menard for any defective Deck System that it was manufactured which was returned by Menard's customers ("Warranty") and also to reimburse Menard for any Deck System returned by a Menard customer even though it was manufactured by a previous vendor ("Guaranty"). (Am. Compl. at ¶ 14.)

Pursuant to this PO and the Current License, Universal provided the Deck system to Menard's distribution centers, including one located in Wisconsin. (Am. Compl. at ¶ 15.)

After Universal signed its PO with Menard, customers have returned tens of thousands of dollars in defective Morris manufactured Deck Systems to Menard (collectively referred to as the "Morris Returns"). (Am. Compl. at ¶ 16.) Many of the Morris Returns were received at Menard's Wisconsin Distribution Center. (Am. Compl. at ¶ 16.) There is no scrap value to the Morris Returns and costs are incurred in destroying them. (Am. Compl. at ¶ 16.)[1]

---

[1] In its Amended Complaint, Universal claims that under the PO, Morris is primarily responsible to Menard for the Morris Returns under the Warranty and Universal is secondarily liable to Menard for the Morris Returns pursuant to the Guaranty. (Am. Compl. at ¶ 16.) While this may be the case, these are legal conclusions which the court will not automatically assume as being true for purposes of this motion to dismiss.

3

At the demand of Menard made to Universal, Universal has reimbursed Menard for the Morris Returns, costing it in excess of $75,000 in lost revenues, credits, and/or costs. (Am. Compl. at ¶ 17.)

**II. DISCUSSION**

Morris asserts that both counts of the complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because each count fails to state a claim upon which relief can be granted.

A motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., requires the court to decide whether the plaintiff's pleadings actually state a claim upon which relief can be granted. For the purposes of a motion to dismiss, all factual allegations of the complaint are taken as true. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993); *Eison v. McCoy*, 146 F.3d 468, 470 (7th Cir. 1998). Such allegations must be viewed liberally and in the light most favorable to the plaintiff. *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999). "'[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 526 (7th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the court is not required to ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988).

"A federal court hearing a case under diversity jurisdiction must apply the substantive law of the state in which it sits." *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). This includes applying the choice of law rules of that state. *Id*. at 260-61. The parties apparently agree that the laws of the State of Wisconsin govern in the case

4

at bar as no party argues otherwise and each cites to and argues from Wisconsin statutes and cases. The task of this court, therefore, is to determine if, accepting all allegations in the complaint as true and drawing all reasonable inferences, Universal has stated claims in its two counts on which relief can be granted under Wisconsin law. On issues of Wisconsin law this court is to look first to the precedent of the Wisconsin Supreme Court, and if there is no case on point, "decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently." *Allstate Ins. Co. v. Tozer*, 392 F.3d 950, 952 (7th Cir. 2004) (internal quotation marks omitted).

**A. Equitable Subrogation/Breach of Contract**

The plaintiff's complaint lists both equitable subrogation and breach of contract under its first count. However, it appears that Universal's first count is not a direct claim for breach of contract against Morris. As such, the court will construe Count I as consisting only of a claim for equitable subrogation.[2]

Universal claims that because Morris manufactured the defective product which was returned, agreed to be liable for the Morris Returns, understood that Menard would look to compensation from the current vendor pursuant to the same Guaranty to which Morris had agreed, and that Universal has

---

[2] Morris addresses the issue of breach of contract in its brief in support of its motion to dismiss, and correctly argues that Universal cannot bring a breach of contract claim against Morris because it did not have a contract with Morris and it was not a third party beneficiary to the Morris-Menard PO. Universal has admitted in its response that it cannot sue Morris directly for breach of contract. Universal included "Breach of Contract" in its title of Count I because equitable subrogation is to the contractual rights of another, and in this case Universal is attempting to pursue Menard's breach of contract claim against Morris. As a result, Universal must first establish that Morris breached its contract with Menard before it can subrogate to Menard's contractual rights.

5

paid Menard for the Morris Returns, it is proper and equitable for Universal to subrogate to the rights under the PO which Morris signed, including but not limited to the Warranty. (Am. Compl. at ¶ 19.)

Universal alleges that the PO signed by Morris and Menard was a legally binding agreement which conferred multiple rights and obligations. (Am. Compl. at ¶ 20.) Universal contends that Morris breached this understanding, in particular the Warranty, by manufacturing and delivering defective Deck Systems to Menard and by failing to reimburse Menard for the Morris Returns pursuant to the Warranty. (Am. Compl. at ¶ 21.) As a result of this breach of contract, Morris alleges that Menard was damaged in excess of $75,000, and that Universal has been damaged concomitantly because it has reimbursed Mendard for Menard's damages pursuant to the Guaranty and expects to continue to reimburse Menard for subsequent Morris Returns. (Am. Compl. at ¶ 22.)

Wisconsin recognizes the doctrine of equitable subrogation. Equitable subrogation "'rests upon the equitable principle that one, other than a volunteer, who pays for the wrong of another should be permitted to look to the wrongdoer to the extent he has paid and be subject to the defenses of the wrongdoer.'" *Pitts v. Revocable Trust of Knueppel*, 282 Wis. 2d 550, 566, 98 N.W.2d 761, 769 (quoting *Garrity v. Rural Mut. Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512, 514 (Wis. 1977)). Subrogation "is applied when a person other than a mere volunteer pays a debt which in equity and good conscience should be satisfied by another." *American Ins. Co. v. City of Milwaukee*, 51 Wis. 2d 346, 351, 187 N.W.2d 142, 145 (Wis. 1971). "Subrogation is based on equity and is permitted only when the rights of those seeking subrogation have greater equity than the rights of those who oppose it." *First Nat'l Bank v. Hansen*, 84 Wis. 2d 422, 429, 267 N.W.2d 367, 370 (Wis. 1978). "[T]he right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is

6

secondarily liable, or not liable at all." *Fitzgerald v. Buffalo County*, 264 Wis. 62, 63, 58 N.W.2d 457, 458 (Wis. 1953). However, because "'equity does not lend itself to the application of black letter rules,' subrogation 'depends upon a just resolution of a dispute under a particular set of facts.'" *Petta v. ABC Ins. Co.*, 278 Wis. 2d 251, 275, 692 N.W.2d 639, 651 (Wis. 2005) (quoting *Vogt v. Schroeder*, 129 Wis. 2d 3, 12, 383 N.W.2d 876, 879 (Wis. 1986)).

Universal did not attach the "Conditions of Order" of the standard Menard PO to its complaint. However, Morris attached this document to its motion to dismiss, and this document is now part of the pleadings because it was referred to in the plaintiff's complaint and is central to its claims. *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleading if they are referred to in the plaintiff's complaint and are central to his claim.").

The Menard PO signed by Morris and Universal reads in relevant part:

> E.  All goods are to be new and first quality. Vendor agrees to reimburse Menard for any return of the goods, whether by Menard or Menard's customers, for any reason or no reason. The returned goods are held back at Menards store by or Menards warranty center. Vendor agrees to accept Menards account of how much
is due. Vendor agrees that Menard does not need to have any customer return documents to verify its account. . . . Vendor understands that its obligations for the returns will last until all of the goods purchased are sold plus a period of 12 months or longer if Vendors warranty is longer.
>
> F.  In consideration of becoming a Vendor for the line(s) of goods listed on the purchase order, you agree to compensate Menard in full for all goods returned by customers, as outlined above, including any goods supplied by previous vendors for the line(s) of goods listed on the purchase order.

(Am. Compl. at ¶ 10.)

Universal alleges in its complaint that Morris has primary liability for the returns of Deck Systems manufactured by Morris, while Universal's obligation to Menard is secondary. Specifically, Universal alleges that Paragraph E of the PO is a Warranty under which Morris has primary liability,

7

and Paragraph F of the PO is a Guaranty under which Universal has secondary liability. (Am. Compl. at ¶ 16.)

Morris argues that these are legal conclusions which do not preclude the motion to dismiss. (Def.'s Br. at 5.) The defendant is correct that courts need not consider bare legal conclusions lacking factual support. *See Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir. 1994) ("We are not compelled to accept . . . conclusory allegations concerning the legal effect of facts set out in the complaint."); *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995) ("'[Plaintiffs] may not avoid dismissal, however, simply by attaching bare legal conclusions to narrated facts which fail to outline the basis of their claims.'" (quoting *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)).

Morris also contends that Universal's allegations of secondary liability are contradicted by the terms of the Menard PO. In particular, Morris claims that under Paragraph F of the PO, Universal agreed to be responsible for the return of prior vendors' goods, and is thus primarily responsible for the returns of the Morris manufactured goods. Furthermore, Morris argues that Paragraph F makes no mention of the priority for returns, and does not contemplate Morris or other previous vendors' continuing liability.

The defendant cites *In re Carley Capital Group*, 119 B.R. 646 (W.D. Wis. 1990), and *Fitzgerald v. Buffalo County*, 264 Wis. 62, 58 N.W.2d 457 (Wis. 1953), to support its position that Universal is primarily liable to Menard and thus not entitled to subrogation. In *Carley*, the district court denied subrogation because the plaintiff was the principal obligor under the letter of credit at issue. 119 B.R. at 649. As the doctrine of equitable subrogation requires that the plaintiffs be

8

secondarily liable on the underlying debt, the court held that it was "clear that subrogation is not available as a result of the payment of a principal obligation under a letter of credit." *Id*.

In *Fitzgerald*, the plaintiff assumed primary liability in a deed to pay mortgages. 264 Wis. at 63, 58 N.W.2d at 457. The court held that the plaintiff was not entitled to subrogation because she did not act as a volunteer but rather "did no more than she had agreed to do." *Id*. Furthermore, the court reasoned that there existed no agreement that she should have security for her mortgage payment, and that the plaintiff was not a surety for the payment of the debt. *Id*.

Morris claims that these cases are analogous to the case at hand. It argues that, similar to the plaintiffs in *Fitzgerald* and *Carley*, Universal agreed to assume primary responsibility for prior vendors' returns by signing the PO with Menard. (Def.'s Br. at 7.) Furthermore, Morris contends that, just as the deed and letter of credit were documents which created independent primary obligations for the plaintiffs in *Fitzgerald* and *Carley*, the PO is a document which creates a primary obligation for Universal, which is fatal to its claims. (Def.'s Reply Br. at 2.)

However, Universal claims that the case at hand has facts distinguishable from *Fitzgerald* and *Carley*. It argues that in *Fitzgerald* the plaintiff agreed by contract with the second party sellers to pay off the mortgage to the third party bank. (Pl.'s Br. at 6.) Furthermore, the plaintiff in *Fitzgerald* gained possession of the property and was thus holding the value of the underlying consideration. Universal contends that, in contrast, it did not contract with Morris to assume Morris' obligation to Menard, the third party. (Pl.'s Br. at 6.) In addition, Universal argues that Morris has retained the money it received for its products, and thus Universal is not holding the value of the underlying consideration. (Pl.'s Br. at 6.)

9

With regards to *Carley*, Universal contends that the facts are distinguishable because the plaintiff in *Carley* was part of the original transaction with the third party, and carried the primary liability to the third party before the second party started its performance. Universal argues that, in contrast, it was not present when Morris entered into the original contract with Menard, and never primarily warranted Morris' manufactured products to Menard. Universal contends that it only consented to pay Menard for Morris' already manufactured and delivered product to gain new business from Menard. (Pl.'s Br. at 7.)

Although *Carley* and *Fitzgerald* establish that a document can create primary obligations fatal to a claim of equitable subrogation, these cases do not establish that the document in this particular case creates a primary obligation for Universal. As stated above, an analysis of subrogation depends upon the just resolution under a particular set of facts. To be sure, there are some similarities in the factual circumstances of these cases, as each involved a document which clearly created obligations for the plaintiffs. However, *Carley* and *Fitzgerald* did not involve the particular factual situation of a successor manufacturer signing the same PO contract as the original manufacturer

Viewing the factual allegations liberally and in the light most favorable to the plaintiff, I conclude that the plaintiff states a claim upon which relief can be granted. At issue is whether the PO signed by Universal makes the plaintiff primarily liable for the returns of Morris product. If Universal is primarily obligated to pay for the Morris Returns, then a claim based on equitable subrogation must fail.

To be sure, Paragraph F of the PO signed by Universal seems to indicate that Universal is obligated to pay for the Morris Returns. The PO states that Universal agrees "to compensate Menard in full for all goods returned by customers . . . including any goods supplied by previous vendors for

the line(s) of goods listed on the purchase order." Under the PO, Universal appears to have agreed to compensate Menard for the Morris Returns, as Morris was a previous vendor. Even though Universal calls Paragraph F a "Guaranty," the PO does not explicitly indicate that Universal's obligation to pay is only triggered by the previous vendor's default. Traditionally, a guaranty is "in essence a secondary obligation requiring the guarantor to pay only in the event of a default by the principal obligor." *Carley*, 119 B.R. at 648.

Furthermore, although Universal in its complaint alleges that Morris has primary responsibility under the Warranty and that Universal has secondary liability under the Guaranty, these are legal assertions which must be supported by the alleged facts. As discussed above, the PO signed by Universal does not necessarily support the legal conclusion that Morris has primary responsibility. The contract signed by Universal does not mention potential obligations to Menard by previous vendors.

However, a look at the totality of the factual circumstances alleged by Universal, including the PO as signed by both Morris and Universal, leads to the conclusion that it is not beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. While there is nothing in the PO signed by Universal which indicates primary liability for a preceding vendor, there is also nothing in the PO signed by Morris indicating that it is relieved of its duty to pay for its returns should there be a successor vendor. The PO merely states that the "Vendor agrees to reimburse Menard for any return of the goods, whether by Menard or Menard's customers, for any reason or no reason," and that the "Vendor understands that its obligations for the returns will last until all of the goods purchased are sold plus a period of 12 months or longer if Vendors warranty is longer." Viewing the facts liberally, it is possible that the original manufacturer of the goods is

11

still liable to Menard under the original PO contract given the lack of language indicating a termination of the obligation if a successor manufacturer is present.

Based on the facts pleaded by Universal, Menard could potentially pursue either Universal or Morris for reimbursement of the Morris Returns. It is not unreasonable to conclude that Morris may retain primary liability as the manufacturer of the defective products and as the original signatory of the Menard PO contract. When viewing the alleged facts liberally and in the light most favorable to the plaintiff, there is support for Universal's claim that Morris has primary liability under Paragraph E and that Universal is secondarily liable under Paragraph F.

Morris argues in the alternative that Universal's equitable subrogation claim is premature. Specifically, Morris contends that Universal has clearly not paid for all of the alleged defective returns because Universal is anticipating more returns. (Def.'s Br. at 7; Am. Compl. at ¶ 22.) Additionally, Morris claims that, because Universal has not paid for all the returns, it is subjecting Morris to potential liability to both the injured party, Menard, as well as to the subrogated party, Universal. (Def.'s Br. at 7.)

"[T]he general rule is that 'subrogation does not arise until the debt has been fully paid.'" *Cutting v. Jerome Foods, Inc.*, 820 F. Supp. 1146, 1151 (W.D. Wis. 1991) (quoting *Garrity v. Rural Mutual Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512, 514 (Wis. 1977). "Payment is the *sine qua non* for subrogation." *Muchow v. Goding*, 198 Wis. 2d 609, 626, 544 N.W.2d 218, 224 (Wis. Ct. App. 1995). "[I]n order to state a claim for subrogation the complaint must state that the injured party has settled with the third party, . . . has been made whole, . . . or state some other justification which would lead to an equitable result." *Campion v. Montgomery Elevator Co.*, 172 Wis. 2d 405, 413, 493 N.W.2d 244, 248 (Wis. Ct. App. 1992).

12

Morris' argument is unavailing. Universal is only seeking to equitably subrogate to the Menard injuries which are complete and for which Menard has already calculated and recovered from Universal. As Menard has already been compensated by Universal for these returns, Morris is not subject to additional potential liability from Menard. To the extent that Universal requests additional legal and equitable relief for future returns, Universal only seeks to have Morris pay Menard directly for all returns of Morris manufactured product, or have this court limit its relief to future payments that Universal makes at the demand of Menard. Neither of these options create the risk of liability to both Menard and Universal.

In sum, after viewing Universal's allegations liberally and in the light most favorable to the plaintiff, Universal states a claim for equitable subrogation upon which relief can be granted. The defendant's motion to dismiss as to Count I will therefore be denied.

**B. Unjust Enrichment**

Universal alleges that Morris received full payment for the defective Deck Systems that were eventually returned ("Defective Product Sums"), and that Morris should have returned the Defective Product Sums because its manufacturing deficiencies were the cause of the defects that led to the Morris Returns. (Am. Compl. at ¶ 24-25.) Universal claims that Menard has charged Universal for the Defective Product Sums, thereby conferring a benefit on Morris, which has retained the Defective Product Sums. (Am. Compl. at ¶ 26.) The Defective Product Sums have allegedly cost Universal over $75,000 in costs and are likely to increase as more customers bring back the Morris Returns to Menard. (Am. Compl. at ¶ 27.) Universal claims that Morris appreciates, knows, and is otherwise aware of the benefit that has been conferred by Universal on it, and that despite its appreciation, knowledge, and awareness of the benefit conferred upon it by Universal, Morris has retained the

13

Defective Product Sums and has failed, refused, and otherwise declined to offer any compensation to Universal.³ (Am. Compl. at ¶ 28-29.) Universal contends that it would be unjust for Morris to retain the Defective Product Sums. (Am. Compl. at ¶ 30.)

A plaintiff must allege and prove three elements to prevail on an unjust enrichment claim: "'(1) a benefit conferred upon the defendant by the plaintiff, (2) appreciation by the defendant of the fact of such benefit, and (3) acceptance and retention by the defendant of the benefit, under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof.'" *Seegers v. Sprague*, 70 Wis. 2d 997, 1004, 236 N.W.2d 227, 230 (Wis. 1995) (quoting *Don Ganser & Assocs, Inc. v. MHI, Inc.*, 31 Wis. 2d 212, 216-17, 142 N. W. 2d 781, 783 (Wis. 1966).

Morris concedes that the second element is met by Universal's amended pleading. However, Morris argues that the amended pleading still does not cure the fundamental defects of the claim with regards to elements one and three; namely, the absence of a benefit conferred upon Morris and the absence of the alleged inequity of Morris' retention of the benefit. (Def.'s Reply Br. at 4.) Specifically, Morris contends that Universal did not confer a benefit on Morris because by reimbursing Menard it was merely complying with its own, independent obligation which it voluntarily assumed by entering into the contract with Menard. It was not providing a benefit to Morris, but rather conferring a benefit upon itself by agreeing to the provision to allow it to do business with Menard. Relatedly, Morris argues that there is no inequity in the situation at hand

---

³ In its brief in support of its motion to dismiss, Morris contends that Universal has failed to plead that Morris was aware that Universal has paid for the return of Morris products and that Morris has retained the benefit of Universal's payment to Menard. Subsequently, Universal amended its complaint with paragraphs 28 and 29, pursuant to Fed. R. Civ. P. 7(a), 15(a).

14

because Universal agreed to be primarily liable in consideration for supplying Menard with the Deck System and reaping potential profits.[4] Morris contends that in essence, Universal is asking it to subsidize Universal's performance of the contractual obligations it freely bargained for. (Def.'s Reply Br. at 4.)

Universal argues that because there is no contract governing the relationship between Morris and Universal, Universal is not barred from pursuing unjust enrichment because of a contract with a third party, namely Menard. The plaintiff cites *Gebhardt Bros., Inc. v. Brimmel* to support its proposition that Wisconsin law only bars claims for unjust enrichment where a contract covering the subject matter in question exists to govern the relationship between the parties. 31 Wis.2d 581, 143 N.W.2d 479 (Wis. 1966).

I conclude that Universal's pleadings state a claim for unjust enrichment upon which relief can be granted. As discussed above, a liberal view of the alleged facts provide support for Universal's contention that Morris was primarily liable for the Morris Returns. This being the case, Universal's reimbursement of Menard conferred a benefit on Morris by discharging it of its obligation to pay Menard under its original contract. Furthermore, Morris' alleged acceptance and retention of the profits from its sales of potentially defective products could constitute circumstances making it inequitable to retain this benefit without payment of the value thereof.

---

[4] Morris notes in its briefs that it has a pending lawsuit against Universal in Tallapoosa County, Alabama, in which it alleges that Universal conspired and tortiously terminated the relationship between Keystone and Morris, and thereafter Universal was wrongfully appointed as the successor licensee of the Deck System. Morris contends in its Reply Brief that there is nothing inequitable about requiring Universal to comply with a contract it essentially stole from Morris. In viewing the alleged facts liberally and in the light most favorable to the plaintiff for purposes of this motion to dismiss, the court will not consider these alleged factual circumstances surrounding the creation of the contract between Universal and Menard.

15

### III. CONCLUSION AND ORDER

In conclusion and for all of the foregoing reasons, the defendant's motion to dismiss Counts One and Two will be denied. Universal's pleadings state claims for equitable subrogation and unjust enrichment upon which relief can be granted.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion to dismiss be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that on December 21, 2006, at 9:00 a.m., a Rule 16 scheduling conference will be conducted in Room 253 of the United States Court House, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, to discuss with the parties the steps necessary to further process this case.

Each party shall follow the procedures set forth in Rule 26 of the Federal Rules of Civil Procedure. In order to assist the court in conducting the Rule 16 conference, your Rule 26(f) report, which is to be filed with the court no later than December 14, 2006, should contain the following additional information:

1. A brief description of the nature of the case, including a statement regarding the basis of subject matter jurisdiction.
2. Whether the parties contemplate amending the pleadings by joining parties or for other reasons.
3. Any motions which are contemplated at this time.
4. The estimated length of trial and whether a jury is requested.
5. Such other matters as may affect the scheduling of this case for final disposition.

Since this case has been designated for electronic filing, documents must be submitted in Portable Document Format (PDF) and shall be filed electronically using the Court's internet-based Electronic Case Files (ECF) system. Registered users may file documents directly into ECF. Please see the Court's web site at wied.uscourts.gov for more information on electronic case filing.

If you are located more than 50 miles from the courthouse, and wish to participate telephonically, please contact Rita Zvers at 414-297-3128 at least one week prior to the scheduling conference with a telephone number where you can be reached at the above scheduled time. The court will initiate the call.

**SO ORDERED** this 30th day of November 2006, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge